IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSHUA BROWN,              : | |
|         Plaintiff,   : | |
| v.                         : | Civ. No.'s 13-2773, 20-2681 |
|                                    : | |
| CITY OF PHILADELPHIA, et al., : | |
|         Defendants.  : | |

## ORDER

This is one of hundreds of civil rights lawsuits arising from crimes allegedly committed by the Philadelphia Police Department's Narcotics Field Unit. Certain NFU Officers were prosecuted in this Court and acquitted. Alleging, *inter alia*, illegal arrest and malicious prosecution, Plaintiff Joshua Brown brings constitutional and state law claims against Defendants Jeffrey Walker and the City of Philadelphia. The City has filed a Motion to Dismiss, contending that Brown's claims (as well as those of at least twenty-three other similarly situated Plaintiffs) are barred by Heck v. Humphrey, 512 U.S. 477 (1994). For the reasons that follow, I will deny the City's Motion.

### I.   BACKGROUND

In denying the City's Summary Judgment Motion respecting Monell liability, I set out the tortured history of this litigation. See McIntyre v. Liciardello, 2020 WL 605717, at *1-7 (E.D. Pa. February 7, 2020). Briefly, the relevant facts and procedural history are as follows:

Plaintiff alleges that on February 4, 2003, he was in his home when Walker and ten unidentified officers entered without a warrant and assaulted him. (Dkt. 20-02681, Doc. No. 1.) Plaintiff further alleges that Defendants then arrested and charged him with drug crimes based on Walker's "false assertion[s]." (Id.) Those charges included Possession with Intent to Distribute, Criminal Conspiracy, and Possession of a Controlled Substance. Plaintiff was convicted of these crimes on September 2, 2003 and sentenced to two to four years imprisonment on December 8,

2003.  (Dkt. 13-02773, Doc. No. 227, Ex. A.)  Plaintiff did not file a direct appeal.  On July 17, 2013, he filed his first Petition for Relief under Pennsylvania's Post Conviction Relief Act.  (Id. at 4.)  Philadelphia Common Pleas Court Judge Sheila Woods-Skipper dismissed that Petition on April 11, 2014.  (Id. at 6-7.)  The Superior Court affirmed, ruling that Plaintiff was "entitled to no relief pursuant to the PCRA" because he was not "incarcerated, on probation, or on parole for the crimes in which former officer Walker was involved in the arrest" at the time of his PCRA filing.  See Commonwealth v. Brown, 2015 WL 7188147, at *2 (Pa. Super. Ct. Nov. 16, 2015).

Plaintiff filed a second PCRA Petition on April 4, 2018.  (Dkt. 13-02773, Doc. No. 227, Ex. A at 8.)  Philadelphia Common Pleas Court Judge Lillian Ransom granted the Petition without a hearing and vacated Plaintiff's convictions.  (Dkt. 20-02681, Doc. No. 6, Ex. C.)  Judge Ransom's Order included no reasoning or discussion of her jurisdiction to grant the Petition under the PCRA.  (See Id.)

On June 8, 2020, Plaintiff filed the instant Complaint against Walker, the City, and ten unidentified Philadelphia Police Officers.  (Dkt. 20-02681, Doc. No. 1.)  On September 28, 2020, the City filed a Motion to Dismiss the Complaint.  (Dkt. 13-2773, Doc. No. 227.)  Plaintiff Brown and liaison counsel for the other Plaintiffs oppose the Motion.  (Doc. No.'s 228, 229.)

## II.    LEGAL STANDARDS

In deciding a motion to dismiss, I must accept as true Plaintiffs' factual allegations and make all reasonable inferences in Plaintiffs' favor.  Fed. R. Civ. P. 12(b)(6); In re Rockefeller Ctr. Props. Inc., 311 F.3d 198, 215 (3d Cir. 2002).  I must then determine whether the facts make out a "plausible" claim.  "Plausibility" is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  The burden is on Defendant to show that Plaintiffs have failed to allege facts

sufficiently detailed to "raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 554, 555 (2007).

### III. DISCUSSION

The City presents a novel application of Heck v. Humphrey, 512 U.S. 477 (1994). Relying on In re James, the City asks me to disregard the PCRA Court's decision vacating Plaintiff's conviction as void *ab initio*, thus rendering Plaintiff unable to satisfy Heck's bar on § 1983 suits that would effectively invalidate an extant conviction. In re James, 940 F.2d 46, 52 (3d Cir. 1991); Heck, 512 U.S. at 486. I decline to do so.

Pursuant to § 1983, a plaintiff may seek redress for constitutional violations committed by state actors. 42 U.S.C. § 1983. A plaintiff who complains of state conduct related to his criminal conviction faces an additional requirement:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, *declared invalid by a state tribunal authorized to make such determination*, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

Heck, 512 U.S. at 486-87 (emphasis added). Because Plaintiff's Second PCRA Petition was untimely, the City urges that the Common Pleas Court acted beyond its state law jurisdiction. Accordingly, the City asserts that: the PCRA Court's decision vacating Plaintiff's convictions was "void"; Plaintiff cannot show that his conviction was vacated by a Court 'authorized to make' that determination; and thus, the Heck bar remains in place. (Dkt. 13-2773, Doc. No. 227, 11-14) (arguing that Plaintiff's PCRA petition was untimely, which is a jurisdictional requirement under the statute). I disagree.

First, a fair reading of Heck forecloses the City's argument. 512 U.S. at 486-87 ("...

3

declared invalid by a state tribunal authorized to make such determination.") The Oxford English Dictionary defines the use of "such" in this context as: "Of the same kind or class as something mentioned or referred to." OXFORD ENGLISH DICTIONARY (2d ed. 1989). Accordingly, even if the Philadelphia Common Pleas Court's decision vacating *Brown's* conviction was erroneous, that Court was surely authorized *generally* to vacate defective Pennsylvania criminal convictions— indeed, that is among its most important functions. The Supreme Court's language in Heck appears related to the sort of "clear usurpation of power" referred to in United Student Aid Funds, Inc. v. Espinosa—including only the most extreme examples of jurisdictional overreach. See 559 U.S. 260, 271 (2010) (citing United States v. Boch Oldsmobile, Inc., 909 F.2d 657, 661 (1st Cir. 1990) ("It is essential to state, that total want of jurisdiction must be distinguished from an error in the exercise of jurisdiction")). In these circumstances, the City cannot show that the Heck bar remains in place.

Even if I agreed with the City's creative reading of Heck, significant federal-state comity issues remain. The City has asked me to exercise "collateral review" over a state court judgment and conclude that, not only did the PCRA Court exceed its jurisdiction in Plaintiff's case, but in dozens of others as well, and that, consequently, I should deny these decisions operative effect. (Doc. No. 227, 18.) The law does not permit me to do so.

James presents the general rule of comity and a purported exception—on which the City relies—as follows:

> . . . once validly entered in a court of competent jurisdiction, a judgment is considered valid until overturned or vacated by that court or an appellate court with supervisory powers over that court's system.
>
> There appears to be only one exception to this hard and fast rule of federal-state comity, and it comes into play only when the state proceedings are considered a legal nullity and thus void *ab initio*. A federal bankruptcy court may intervene only when the state proceedings are void *ab initio*; it lacks the power where it simply

4

disagrees with the result obtained in an otherwise valid proceeding." 940 F.2d at 52 (internal citation omitted). The James Court emphasized that "[i]n the interest of finality, the concept of void judgments is narrowly construed." Id. (citing Lubben v. Selective Serv. Sys. Local Bd. No. 27, 453 F.2d 645, 649 (1st Cir. 1972)).

The City argues that I am authorized by James to: (1) inquire into the state law basis for the PCRA Court's jurisdiction; and (2) disregard the PCRA Court's judgments if I find no valid jurisdictional ground. This reasoning, however, is based on an unduly expansive reading of James—one which is belied by the decision itself, later decisions of the Third Circuit, and caselaw from other Circuits.

First, the James Court gives no indication that its discussion of void judgments extends beyond the bankruptcy context. James itself was a bankruptcy case and the only precedents the Court cites in support of its 'voidness' discussion are also bankruptcy cases. See id. (citing Kalb v. Feuerstein, 308 U.S. 433 (1940); Gonzales v. Parks, 830 F.2d 1033 (9th Cir. 1987)). Bankruptcy is, of course, a unique context in which federal jurisdiction is generally exclusive. 28 U.S. § 1334. Further, the James Court was explicit that, in the interest of finality, the concept of a void judgment must be "narrowly construed." Id. (quoting Lubben v. Selective Serv. Sys. Local Bd. No. 27, 453 F.2d 645, 649 (1st Cir. 1972)). This admonition does not encourage me to read James as extending beyond bankruptcy cases.

Second, the Third Circuit has limited James's application, even observing that the language relied upon by the City was merely dicta. See Todd v. United States Bank National Association, 685 Fed. App'x 103, 105-06 (3d Cir. 2017); In re Knapper, 407 F.3d 573, 581 n. 16 (3d Cir. 2005). Significantly, in Lambert v. Blackwell, the Third Circuit narrowed the holding in James: "that a federal court may vacate a state court decision when the state court acts in violation of the federal

5

bankruptcy statute's automatic stay provisions." 387 F.3d 210, 240 n. 25 (3d Cir. 2004) (citing Raymark Indus., Inc. v. Lai, 973 F.2d 1125, 1132 (3d Cir.1992)); see also Wallace v. District Attorney of Lehigh County, Pennsylvania, 2017 WL 6667523, *1 n. 1 (E.D. Pa. October 4, 2017) ("Courts have not applied [James] outside of the bankruptcy context."). The Lambert Court construed that holding as based on the following reasoning:

> We reached that conclusion [that the state judgment violating the automatic stay could be vacated] because an automatic stay obviates the state court's jurisdiction and renders its decision void *ab initio*. In re James differs from this [28 U.S.C. § 2254] case (and most cases) because the state court's jurisdiction, or lack thereof, was a function of federal law (the federal bankruptcy statute). Here, in contrast, the PCRA Court's jurisdiction is a matter of state law.

Id. at 240 n. 25. This rationale forecloses the City's argument by conclusively distinguishing James. The Third Circuit has focused on the unique nature of bankruptcy jurisdiction—that it is "a function of federal law"—as the key step in James's reasoning. This case is unlike James—and identical to Lambert—in that the PCRA Court's jurisdiction here was a function of state law. The comity concerns expressed in James itself would thus be impugned were I to decide that state law deprived the PCRA Court of jurisdiction. See Mullaney v. Wilbur, 421 U.S. 684, 691 (1975) ("state courts are the ultimate expositors of state law").

Third, other Circuits to consider James have similarly agreed that—insofar as they were willing to recognize a void *ab initio* exception at all—it has no place outside the bankruptcy context. See, e.g., In re Skyline Woods Country Club, 636 F.3d 467, 471 (8th Cir. 2011) ("[The void *ab initio*] exception has been limited to collateral attacks on state-court judgments that conflict with the exclusive jurisdiction of federal bankruptcy courts."); Schmitt v. Schmitt, 324 F.3d 484, 487 (7th Cir. 2003) ("While a void *ab initio* Rooker–Feldman exception might be appropriate in some bankruptcy cases (apparently the only situation in which it has been applied) in order to protect the dominant federal role in that specialized area of the law, it has no place here.

6

. . . [T]he Illinois state courts were competent to determine their own jurisdictional boundaries . . . .").

Finally, it is far from clear that the PCRA Court judgment was 'void' in the pertinent sense. The Supreme Court has set a most demanding standard for a District Court's finding a judgment "void," even when the applicable body of law is federal:

> Federal courts considering Rule 60(b)(4) motions that assert a judgment is void because of a jurisdictional defect generally have reserved relief only for the exceptional case in which the court that rendered judgment lacked even an "arguable basis" for jurisdiction. Nemaizer v. Baker, 793 F.2d 58, 65 (C.A.2 1986); see, e.g., Boch Oldsmobile, supra, at 661–662 ("[T]otal want of jurisdiction must be distinguished from an error in the exercise of jurisdiction, and ... only rare instances of a clear usurpation of power will render a judgment void" (brackets and internal quotation marks omitted)).

Espinosa, 559 U.S. at 271. Although the City has argued that the PCRA Court lacked jurisdiction, I am not convinced that a PCRA Court deciding a flawed PCRA petition with the consent of both parties could be deemed a "clear usurpation of power," especially when the state appellate courts have liberally construed the limits of PCRA jurisdiction. See Commonwealth v. Lambert, 765 A.2d 306, 322-323 (Pa. Super. 2000) (Superior Court reviewed and affirmed PCRA Court judgment on the merits, despite finding that the statute's jurisdictional timeliness requirements had not been complied with).

In sum, I will not entertain the City's collateral attack on the jurisdiction of the PCRA Court in this matter, nor in the comparable cases that have been brought to my attention. My analysis has focused on the City's jurisdictional argument, but it applies with equal force to its alternative contention that Plaintiff was ineligible for PCRA relief because his liberty was not infringed at the time his Second Petition was filed. Accordingly, I will deny the Motion to Dismiss.

## IV. PATH GOING FORWARD

To date some 275 NFU civil rights cases have been filed in this Court. Former Chief Judge Tucker ordered the cases consolidated and assigned to me for pretrial purposes. (Dkt. 13-2773, Doc. No. 3.) At the urging of lead Plaintiffs' counsel and defense counsel, all the matters were put into suspense pending settlement negotiations before Magistrate Judge Timothy Rice. To date approximately 175 cases have settled. Settlement discussions continue. On December 30, 2020, Plaintiff's counsel informed me that 19 additional cases had settled. Moreover, at the Parties' urging, counsel have selected a small number of "Bellwether Cases" to go forward before all others. Once discovery was completed in these cases, Chief Judge Sanchez was to assign them to individual Judges for trial. Unfortunately, since early last year, the COVID-19 pandemic has precluded any civil trials from going forward. At the present time, the Court does not anticipate that it will be able to summon jurors, empanel juries, and conduct civil trials until Spring of this year (at the earliest). Once the COVID-19 restrictions are lifted, the Court anticipates assigning the Bellwether Cases as I have discussed, so that they can be tried.

***

**AND NOW**, this 8th day of January, 2021, it is hereby **ORDERED** that the Defendant City of Philadelphia's Motion to Dismiss (Dkt. 13-02773, Doc. No. 227) is **DENIED**.

**AND IT IS SO ORDERED.**

*/s/ Paul S. Diamond*
_____
Paul S. Diamond, J.

8